# Exhibit B

WILLIAM H. THOMAS (ISB 3154)
DANIEL E. WILLIAMS (ISB 3920)
THOMAS, WILLIAMS & PARK, LLP
121 N. 9th St., Ste. 300
P.O. Box 1776
Boise, ID  83701-1776
Telephone: (208) 345-7800
Fax: (208) 345-7894
wmthomas@thomaswilliamslaw.com
danw@thomaswilliamslaw.com

Attorneys for Plaintiff Idaho First Bank

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE

STATE OF IDAHO, COUNTY OF ADA

| | |
|---|---|
| IDAHO FIRST BANK,<br>An Idaho corporation<br><br>Plaintiff,<br><br>vs.<br><br>SHEILA MOORE, an individual and<br>KIRK MOORE, an individual,<br><br>Defendants. | Case No.  CV01-18-07998<br><br>AMENDED COMPLAINT |

## COMPLAINT

Plaintiff, Idaho First Bank, ("Plaintiff" or "IFB"), through its undersigned counsel, for its

Complaint against Defendants, Sheila Moore ("Ms. Moore") and Kirk Moore ("Mr. Moore")

(collectively "Defendants") states and alleges:

AMENDED COMPLAINT, Page 1

## INTRODUCTION

1.     Plaintiff, IFB, sues Defendants Sheila and Kirk Moore, husband and wife, for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; violations of Idaho's Trade Secrets Act ("ITSA") Idaho Code § 48-80; breach of contract; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; breach of the duty of loyalty; negligence; and, conspiracy.

## PARTIES

2.     Plaintiff, Idaho First Bank, is an Idaho corporation with its main office in McCall, Idaho. IFB is a financial institution with deposits insured by the Federal Deposit Insurance Corporation.

3.     Defendant, Sheila Moore, is an individual, who, upon information and belief, resides in Ada County, Idaho.

4.     Defendant, Kirk Moore, is an individual, who, upon information and belief, resides in Ada County, Idaho.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiff's claims under Idaho Code § 5-514, and venue is proper in this judicial district under Idaho Code § 5-404 because the causes of action arose and the acts and omissions complained of occurred in Ada County, Idaho.

6.     Plaintiff's claims for damages exceed the jurisdictional minimum amount for this Court.

AMENDED COMPLAINT, Page 2

## GENERAL ALLEGATIONS

7.     Idaho First Bank is an Idaho State-chartered community bank that provides various financial products and services to its customers, such as savings and checking accounts, mortgages, credit cards, personal and commercial loans, etc.

8.     The products and services are offered with the support and backing of IFB's balance sheet which reflects healthy asset holdings such as cash and investments, real and personal property (owned and leased), receivables (loan products in repayment), and a significant investment in developing trade secrets designed to enhance IFB's competitive edge.

9.     The trade secrets include but are not limited to IFB's customer lists, its operating policies and procedures, and customized reports and documents – some created in-house, others commissioned through third parties – that are used internally by IFB management to track and analyze the bank's operational activities and the penetration and performance of its products and services, and to evaluate customer behavior.

10.     As a state-chartered, federally-insured state bank, IFB is also subject to the Gramm-Leach-Blily Act of 1999, Pub. L. No. 106-102 Stat. 1338 (1999) and under the Federal rules and regulations for privacy and confidentiality as codified at 15 U.S.C. § 6801 *et seq.* IFB securely maintains the personally identifiable information ("PII") of its customers. Such PII includes name, address, date of birth, social security number, account numbers, passwords, and financial information.

11.     Because of the sensitive nature of its products and services, trade secrets and PII (collectively referred to as "Confidential Information"), and requirements to secure and safeguard both categories of information, IFB makes a substantial and ongoing effort to ensure

AMENDED COMPLAINT, Page 3

the security, safety and soundness of its computer systems, internal processes, and those who access all such information in the regular course of their duties.

12.    IFB is subject to federal and state statutes and regulations which regulate all aspects of IFB's business activities. IFB is required to strictly adhere to these statutory and regulatory mandates. IFB's failure to follow these rules and regulations jeopardizes the requirements that IFB must at all times operate safely and soundly under the strict scrutiny of its regulators.

13.    IFB's efforts to comply with all banking regulations and common law duties include system security programming, testing, and auditing, on-going education of employees about the heightened sensitivity of trade secrets and PII, and the maintenance of policies and procedures that require employees to maintain the confidentiality of its Confidential Information and requiring those employees to acknowledge their duty to safeguard such information.

14.    At all times relevant here through February 26, 2018, Defendant Ms. Moore was employed by IFB in Boise, Idaho.

15.    At IFB, Ms. Moore was a residential mortgage officer responsible for soliciting, negotiating and coordinating closing residential real estate loans in compliance with the Bank's lending policies and procedures including its Confidential Information. It included working closely with current and prospective clients regarding their individual applications and requests and reviewing ongoing accounts to ensure that maximum levels of quality and security are maintained. In this context Ms. Moore was privy to customers' PII.

AMENDED COMPLAINT, Page 4

16.     On October 6, 2009, Ms. Moore signed a Privacy and Confidentiality Agreement with IFB.  The purpose of which was to prevent the unauthorized disclosure of Confidential Information.  A copy of the Privacy and Confidentiality Agreement is attached as Exhibit A.

17.     Confidential Information was defined by the Gramm-Leach-Bliley Act and included "all Bank and Bank customer information and materials including, without limitation, regarding business operations, financial information and business strategies (whether or not reduced in writing), and any notes, analyses, compilations, studies, reports, records, evaluations, interpretations, or other documents prepared by or about the Bank or the Bank's customers."

18.     In the Confidentiality Agreement Ms. Moore acknowledged and "agree[d] that she [was] familiar with and [would] abide by all of the Bank's policies, practices and procedures with regard to non-disclosure of Confidential Information."

19.     Ms. Moore initialed a paragraph in the Confidentiality Agreement in which she agreed she would "access Confidential Information only as required to perform her assigned duties and will not disclose Confidential Information to Non-Employees. Employee will not access Confidential Information that is not necessary to carry out her job."

20.     Ms. Moore initialed a paragraph in the Confidentiality Agreement in which she agreed she would "store Confidential Information under secure conditions and make every effort to insure non-disclosure of Confidential Information to Non-Employee. Employee will not divulge, copy, release, or disclose Confidential Information to Non-Employee."

21.     Ms. Moore initialed a paragraph in the Confidentiality Agreement in which she represented she had "read the Bank's policies, practices and procedures with regard to disclosure

of Confidential Information and agree to comply with those provisions. Employee understands

that failure to comply may result in disciplinary action, including termination of employment."

22.     Ms. Moore initialed a paragraph in the Confidentiality Agreement in which she

agreed "to indemnify and hold and Bank and its Shareholders harmless from any damage, loss,

costs, or liability (including legal fees and costs or enforcing this indemnity) arising out of or

resulting from any unauthorized use of Confidential Information or other violation of this

Agreement.

23.     By the end of January and early February 2018, Ms. Moore had initiated a conflict

with a co-worker over what she alleged as a "fraudulent loan" that had been granted to her sister

and took steps to leave her employment with IFB.

24.     On February 7, 2018, Ms. Moore emailed Courtney Cross ("Cross") and escrow

assistant at First American Title. Ms. Moore asked Cross if Cross was "able to see a recent home

sale for [Ms. Moore's sister]. [Her sister] purchased a home in January and I am trying to locate

the address of the home she purchased." Ms. Moore's request was made under the pretense that

she was acting within the scope of her employment and that her position with IFB gave the

authority to make such a request. Ms. Moore had no authority to request such information from

Ms. Cross. In fact, Ms. Moore was dragging Ms. Cross into the web of Ms. Moore's deceit and

personal vendetta.

25.     Her sister's loan was the loan Ms. Moore had referenced as "fraudulent." Her

sister's loan was not a loan that Ms. Moore was involved in as an IFB employee.

26.     Several minutes later on February 7, 2018, Cross responded, "I found a [your

sister] that lives at [address redacted]." Ms. Moore then asked which mortgage company her

AMENDED COMPLAINT, Page 6

sister used and whether the loan closed with First American. Cross reported that "the lender was Idaho First Bank [smiley face emoticon inserted] DT recorded 1/24/18." Ms. Moore asked if Cross was "One more, are you 100% it [sic] was Idaho First Bank?"

27.     On February 7, 2018, Ms. Moore corresponded with an Emily Kelley ("Kelley)." Kelley states that "if [Moore] is still interested, [she'd] love to join [her] team," to which Ms. Moore responds with "Kelli and I want you on our team" and sets up an appointment for 10:30 a.m. at River City Coffee on State Street the next day.

28.     On February 9, 2018, Ms. Moore communicated with two IFB employees and complained about "office drama" between herself and the employee Ms. Moore complained about. In a response email, one employee referenced the bank employee as "doing a fraudulent loan." Ms. Moore continued to describe the employee as a "victim" and "pathetic and entitled."

29.     On February 12, 2018, Ms. Moore emailed Cross and said her weekend consisted of "lots of drinking and crying," and that "something big happened" and she was "now looking for a new place to work," asking Cross to "keep that on the down low." When pressed for details, Ms. Moore responded with "office drama and [she was] not staying for it. Been here too long to put up with drama from grown adults."

30.     From at least February 12, 2018, Ms. Moore planned for terminating her employment from IFB.

31.     On February 12, 2018, at 8:03 p.m., she sent herself an email attachment via ShareFile titled "LEAD CALLS FROM REFERRALS – TRACKING FORM.docx." The referenced documents are IFB internal documents.

AMENDED COMPLAINT, Page 7

32.    Ms. Moore's email correspondence indicates that she received or otherwise asked various associates their opinions about other IFB competitors, such as emailing a "Kevin Rice" and a "Deedra" about "what [they] thought about Homestreet." Ms. Moore then sent these notes to herself and noted they could "go to happy hour more often." Other emails of this nature include a rejected job offer from Finance of America on February 12, 2018.

33.    In emails with Kevin Rice, Senior Account Manager, Radian Guaranty, Ms. Moore, on February 13, 2018, discussed her efforts to apply for employment with Fairway Independent Mortgage Corporation ("Fairway").

34.    On February 18, 2018, at 6:16 p.m., Ms. Moore emailed a list of attachments from her IFB email address to her personal Gmail account. These files were IFB templates and were titled "CALCULATING HOMEOWNERS EXEMPTION.pdf", "CEASE AND DESIST.pdf", "CONTRACT FOR DEED.rtf" and "CONTRACT FOR HOMEOWNERS EXEMPTION.doc." The documents forwarded were IFB internal forms. Ms. Moore sent other emails until the end of February to herself that contained other IFB forms.

35.    On February 19, 2018, at 4:35 p.m., Ms. Moore uploaded "APPRAISALS.zip" to the Citrix ShareFile. The ShareFile system then sent a "Request Files" link to her IFB email address, containing a link that would allow the recipient to download "APPRAISALS.zip" by clicking on it.

36.    One minute later, the email containing the download for "APPRAISALS.zip" was sent from Ms. Moore's email to her husband, Defendant Kirk Moore (KIRK.MOORE@************.com), his employer, a third-party with no business affiliation with IFB.

AMENDED COMPLAINT, Page 8

37.     On February 20, 2018, 7:10 a.m., Mr. Moore responded to Mr. Moore, "Done, saved to your thumb drive. It is in my bag…." Ms. Moore immediately responded, "Thanks baby cheeks."

38.     The "APPRAISALS.zip" file was downloaded onto Mr. Moore's employer's computer system. Despite demands to Mr. Moore's employer that the appraisals be expunged from the employer's computer system, as of the date of this Complaint, the employer has provided no evidence that it has complied with IFB's demand.

39.     Ms. Moore made similar transfers of information from the IFB servers, to ShareFile, to Mr. Moore's email at his employer.

40.     The "APPRAISALS.zip" file contained 1011 files, 1003 of which were PDFs. These PDF files are complete appraisal packets for various residences, each named with the last name of the borrower. Address information, contract prices, full names, and other loan data are present in these files and are fully un-redacted. Information in these 1011 files may be Personally-Identifiable Information ("PII").

41.     On February 21, 2018, Fairway sent a "conditional offer of employment for the position of Loan Officer Assistant (LOA)," with a start date of March 5, 2018. Ms. Moore accepted the offer.

42.     On February 26, 2018, Ms. Moore gave her notice, terminating her employment with IFB.

AMENDED COMPLAINT, Page 9

## COUNT I

### Violation of the Federal Computer Fraud and Abuse Act ("CFAA") Against Ms. Moore
### 18 U.S.C. § 1030 *et seq.*

43.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 42 as if set forth in this paragraph.

44.     Idaho First Bank operates a computer network ("Computer System") to which access is limited to those with a need for use and authorization in providing banking services that affect interstate commerce in the United States. The Computer System is secure and requires authentication and a password for access and use.

45.     IFB stores confidential IFB proprietary information and PII of IFB customers on its Computer System. Access to the Computer System and to the confidential information and PII is restricted under IFB policy and by the need for a password to those with a need to use, ~~and~~ authorization and is for IFB business purposes only.

46.     Ms. Moore intentionally accessed IFB's Computer System and access, copied, and took confidential information belonging to IFB, including PII, that was stored on it without authorization and/or by exceeding her authorized access, all in violation of CFAA § 1030(a)(2).

47.     Idaho First Bank has been damaged and has suffered losses because of Ms. Moore's actions exceeding $5,000.

48.     Ms. Moore's actions have caused and continue to cause IFB irreparable harm.

## COUNT II

### Violation of Idaho's Trade Secrets Act ("ITSA") Against Ms. Moore
### Idaho Code § 48-801

49.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 48 as if set forth in this paragraph.

50.     Idaho First Bank possesses valuable confidential and proprietary financial and business information within various programs, reports, and other documents used in providing financial services ("IFB Trade Secrets"), such as customer lists, materials customized for IFB such as lending strategy materials and internal procedures relating to how IFB processes loan applications; financial analyses; and market lists. IFB also maintains confidential real estate appraisals for its mortgage lending.

51.     The IFB Trade Secrets derive economic value from not being readily ascertainable by others and that are the subject of reasonable efforts to maintain their secrecy.

52.     Ms. Moore copied the IFB Trade Secrets that incorporate trade secrets within the meaning of Idaho Code § 48-801(5)

53.     During the time prior to her notice of resigning from her employment with IFB, Ms. Moore copied IFB Trade Secrets without IFB's consent or authorization and, upon information and belief, disclosed them and/or provided them to third parties.

54.     Ms. Moore knew and continues to know of her duty as then-current and now-former IFB employee to maintain the secrecy of IFB Trade Secrets.

55.     Ms. Moore knowingly, intentionally, maliciously and improperly acquired and disseminated the IFB Trade Secrets in breach of her duty to maintain their secrecy.

AMENDED COMPLAINT, Page 11

56.     Ms. Moore engaged in this conduct with willful, malicious, and improper motives and with reckless indifference to the rights and duties of IFB.

57.     Upon information and belief, Ms. Moore copied, disclosed and/or used the IFB Trade Secrets to further her mortgage lending career and to profit from IFB's Trade Secrets.

58.     IFB has been damaged by this misappropriation of data, entitling it to recover compensatory damages and other statutory remedies and recourse contemplated by I.C. §48-801.

## COUNT III

### Breach of Contract Against Ms. Moore

59.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 58 as if set forth in this paragraph.

60.     Ms. Moore's Confidentiality Agreement with IFB is a valid and enforceable contract.

61.     IFB has performed any and all obligations and conditions precedent required of it by the Confidentiality Agreement.

62.     Ms. Moore breached the terms of the Confidentiality Agreement by constructing, using, disclosing, and/or wrongfully taking information pertaining to IFB's customers and other property belonging to IFB to benefit herself.

63.     As a result, IFB has suffered and will continue to suffer damages.

64.     Because of Ms. Moore's breaches of the Confidentiality Agreement, IFB is suffering reputational damages and other injuries.

AMENDED COMPLAINT, Page 12

## COUNT IV

### Breach of the Covenant of Good Faith and Fair Dealing

65.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 64 as if set forth in this paragraph.

66.     Ms. Moore's Confidentiality Agreement with IFB is a valid and enforceable contract.

67.     A covenant of good faith and fair dealing is in all employment agreements in Idaho.

68.     Ms. Moore's actions, unauthorized accessing customer information from IFB's Computer System, dissemination of customer PII, and allowing un-affiliated third parties access to PII, breached the covenant of good faith and fair dealing.

69.     Because of Ms. Moore's breaches of the Confidentiality Agreement, IFB is suffering reputational damages and other injuries.

## COUNT V

### Breach of Fiduciary Duty Against Ms. Moore

70.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 69 as if set forth in this paragraph.

71.     Ms. Moore owed fiduciary duties to IFB, including without limitations, the duty of loyalty.

72.     Ms. Moore breached her fiduciary duties to IFB by, among other misdeeds:

72.1 misappropriating or causing to be misappropriated the PII and other Confidential Information;

72.2 using her secure access to IFB's Computer System to acquire Confidential Information to compete against IFB;

72.3 falsely accusing IFB of engaging in "fraudulent" loan transactions; and,

72.4 stealing bank property from IFB.

73.    Ms. Moore's breaches of fiduciary duties proximately injured IFB, including, without limitation, reputational damage and financial loss.

## COUNT VI

### Indemnification for All Bank Damages, Losses, Costs, Liability and Attorneys' Fees Against Ms. Moore

74.    Plaintiff incorporates the allegations set forth in paragraphs 1 - 73 as if set forth in this paragraph.

75.    In Paragraph 3.D. of the Confidentiality Agreement signed by Ms. Moore, she agreed: "to indemnify and hold Bank and its Shareholders harmless from any damage, loss, costs, or liability (including legal fees and costs for enforcing this indemnity) arising out of or resulting from any unauthorized use of Confidential Information or other violation of this Agreement."

76.    As a result of Ms. Moore's unauthorized use and disclosure of IFB Confidential Information, IFB has been damaged, incurred losses, costs and attorneys' fees in an amount to be proved at trial.

AMENDED COMPLAINT, Page 14

77.     Ms. Moore is contractually obligated to indemnify and hold IFB and its Shareholders harmless for the damages, losses, costs and attorneys' fees it has incurred as a result of Ms. Moore's violations of the Confidentiality Agreement.

## COUNT VII

### Conversion Against All Defendants

78.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 77 as if set forth in this paragraph.

79.     The Confidential Information, PII, lending forms, guides, worksheets and other proprietary information constitutes property in which IFB has a right, including the absolute and unconditional right to the immediate possession thereof.

80.     Defendants have wrongfully and without authorization assumed control, dominion, or ownership of the property of IFB.

81.     IFB demanded the return of the Confidential Information and other proprietary information wrongfully taken by Ms. Moore and Mr. Moore upon Ms. Moore's departure from IFB. Defendants have not returned such property.

82.     Because of Defendants' actions, IFB has suffered and will continue to suffer damages.

## COUNT VIII

### Civil Conspiracy Against All Defendants

83.     Plaintiff incorporates the allegations set forth in paragraphs 1 - 82 as if set forth in this paragraph.

AMENDED COMPLAINT, Page 15

84.     Defendants agreed and conspired to commit the unlawful acts set forth above.

85.     Defendants knowingly and voluntarily committed the acts in the above counts in furtherance of their conspiracy.

86.     Because of the above-described conspiracy, IFB has suffered reputational damage and economic losses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court enter judgment against Defendant and for Plaintiff by:

A.     awarding Plaintiff its actual damages;

B.     awarding Plaintiff disgorgement and restitution;

C.     awarding Plaintiff pre- and post-judgment interest;

D.     awarding Plaintiff its reasonable attorneys' fees and costs; and

E.     granting Plaintiff such other further relief as may be just.

DATED this 4th day of June, 2018.

THOMAS, WILLIAMS & PARK, LLP

William H. Thomas
Attorneys for Plaintiff

## PRIVACY AND CONFIDENTIALITY AGREEMENT

This Privacy and Confidentiality Agreement ("Agreement") is entered into this ⎽⎽⎽⎽ day of ⎽⎽⎽⎽⎽⎽, 2009, by and among Idaho First Bank, a state chartered bank ("Bank"), Sheila Moore ("Employee"), and Tonia Witt ("Non-Employee"), (collectively the "Parties").

The Parties agree to enter into a confidential relationship with respect to disclosure of certain private and confidential information concerning the privacy of the Bank's customers and Bank information in general ("Confidential Information"). The purpose of this Privacy and Confidentiality Agreement is to prevent the unauthorized disclosure of Confidential Information as defined below.

1.    **Definition of Confidential Information.**  For the purposes of this agreement, Confidential Information shall have the same meaning as the term "Personally Identifiable Financial Information," which is defined by the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*, as follows:  any information a consumer provides to obtain a financial product or service; any information about a consumer resulting from any transaction involving a financial produce or service; or any information otherwise obtained about a consumer in connection with providing a financial product or service by the Bank.  In addition, Confidential Information shall also include all Bank and Bank customer information and materials including, without limitation, regarding business operations, financial information and business strategies (whether or not reduced in writing), and any notes, analyses, compilations, studies, reports, records, evaluations, interpretations, or other documents prepared by or about the Bank or the Bank's customers.

PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 1



2.     **Relationship of the Parties.**  Employee is an employee of the Bank.  Employee

has, of her own volition, undertaken to request assistance from Non-Employee.  Employee has

entered into a working relationship with Non-Employee, pursuant to which Non-Employee is

solely responsible to Employee.  Non-Employee acknowledges and agrees that Non-Employee is

not an employee of the Bank and Non-Employee's compensation, if any, is to be paid solely by

Employee.  Non-Employee acknowledges and agrees that Non-Employee is not entitled to any

benefit provided by the Bank to its employees.  Employee is solely responsible for the payment

of any wages to Non-Employee and is solely responsible for payment of any taxes or any other

required governmental withholdings in the event Non-Employee is determined to be Employee's

employee.  In the event Non-Employee's status is that of independent contractor, Employee will

be solely responsible for providing Non-Employee with an Internal Revenue Service tax form

1099.  It is understood and agreed that no withholding of income, employment or other taxes has

been or is required to be made on behalf of Non-Employee by the Bank.  Non-Employee

specifically agrees that, to the extent any tax liability (state, federal or otherwise) may now or

hereafter become due because of the payment of any sums to Non-Employee, such liabilities

shall be the sole responsibility of Employee and/or Non-Employee and Employee and/or Non-

Employee shall pay any taxes, penalties or interest which may be due or payable.  Moreover, if,

for any reason, at any time, a claim is made against the Bank for Non-Employee's alleged share

of withholdings or taxes of any kind or other payments made to Non-Employee (or for attorney

fees attributable thereto), Employee and Non-Employee both agree to, within thirty (30) days of

being notified of such claim(s), indemnify the Bank and hold it harmless from such claims,

including any penalties and/or interest.

PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 2

3.   **Access to Confidential Information.**   Employee and Non-Employee acknowledge and understand that Non-Employee is not entitled to any access to Confidential Information.  Employee agrees that she is familiar with and will abide by all of the Bank's policies, practices and procedures with regard to the non-disclosure of Confidential Information. Employee acknowledges and agrees that she will not provide Non-Employee with any Confidential Information.  Employee and Non-Employee, recognizing the above-stated obligations and responsibilities, agree to the following:

(Initial here)

A. Employee will access Confidential Information only as required to perform her assigned duties and will not disclose Confidential Information to Non-Employee. Employee will not access Confidential Information that is not necessary to carry out her job.

B. Employee will store Confidential Information under secure conditions and make every effort to insure non-disclosure of Confidential Information to Non-Employee. Employee will not divulge, copy, release, or disclose Confidential Information to Non-Employee.

C. Employee and Non-Employee have read the Bank's policies, practices and procedures with regard to disclosure of Confidential Information and agree to comply with those provisions.  Employee understands that failure to comply may result in disciplinary action, including termination of employment.

D. Employee agrees to indemnify and hold and Bank and its Shareholders harmless from any damage, loss, costs, or liability (including legal fees and costs or enforcing this indemnity) arising out of or resulting from any unauthorized use of Confidential Information or other violation of this Agreement.  In addition, Employee agrees that

PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 3

money damages would not be a sufficient remedy for any breach of this Agreement by Employee or Non-Employee and that the Bank shall be entitled to equitable relief by way of injunction and specific performance if Employee or Non-Employee breaches or threatens to breach any of the provisions of this Agreement.  Employee agrees not to oppose the granting of such relief, but to waive, and to cause Non-Employee to waive, any requirement for securing or posting of any bond in connection with such remedy.

E. Employee and Non-Employee understand and agree that no failure or delay by the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof, and that no single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

4.     **Governing Law.**  This Agreement is for the benefit of the Bank, and shall be governed and construed in accordance with the laws (excluding the conflict of laws rules) of the State of Idaho.

5.     **Waiver.**  This Agreement represents the entire understanding and agreement of the Parties hereto relating to the subject matter hereof and may be modified or waived only in a separate writing executed by the Bank, Employee and Non-Employee expressly so modifying and waiving such agreement.

6.     **Attorney Fees.**  In the event any party to this Agreement initiates litigation to enforce or defend this Agreement, the prevailing party in such litigation shall be awarded their reasonable costs and attorney fees.

PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 4

7.     **Venue.**  Employee and Non-Employee consent to personal jurisdiction, service and venue in any court in Ada County, Idaho.

8.     **Jury Waiver.   Employee and Non-Employee hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by the Bank, Employee and/or Non-Employee arising out of this Agreement.  (Initial here:** _SM  SM_ **)**

IDAHO FIRST BANK

By: _Jeremy Bordner_

Title: _V.P. Residential Lending_

_Sheila Moore_, Employee

_Tonia Witt_, Non-Employee

STATE OF IDAHO    )
                 )ss.
County of _ADA_    )

On this _6th_ day of _OCTOBER_, 2009, before me, the undersigned Notary Public in and for said State, personally appeared _JEREMY BORDNER_, known to me or identified to me to be the person whose name is subscribed to the within instrument as the _V.P. Residential Lending_ of Idaho First Bank and acknowledged to me that he executed the same on behalf of Idaho First Bank.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residing at: _BOISE, ID_
My Commission Expires: _9/21/2010_

**PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 5**

STATE OF IDAHO     )
                   )ss.
County of _ADA_    )

On this _6_ day of _OCTOBER_, 2009, before me, the undersigned Notary Public in and for said State, personally appeared Sheila Moore, known to me or identified to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residing at: _BOISE, IDAHO_
My Commission Expires: _9/21/2010_

STATE OF IDAHO     )
                   )ss.
County of _ADA_    )

On this _6th_ day of _OCTOBER_, 2009, before me, the undersigned Notary Public in and for said State, personally appeared Tonia Witt, known to me or identified to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Notary Public for Idaho
Residing at: _BOISE, ID_
My Commission Expires: _9/21/2010_

PRIVACY AND CONFIDENTIALITY AGREEMENT, P. 6